IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GAYE LYNN DILEK BREWER,
    Plaintiff,

vs.                                            Case No.: 3:15cv95/RV/EMT

EDWARD MEADOWS, et al.,
    Defendants.
_____ /

## REPORT AND RECOMMENDATION

Plaintiff Gaye Lynn Dilek Brewer ("Brewer"), a non-prisoner proceeding pro se and in forma pauperis, commenced this action by filing a civil complaint (ECF No. 1). Pending before the court is Brewer's Fifth Amended Complaint (ECF No. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Brewer, it is the opinion of the undersigned that dismissal of this action is warranted.

I.     BREWER'S ALLEGATIONS

Brewer names the following Defendants in her Fifth Amended Complaint: (1) Edward Meadows, President of PSC, (2) Lisa Bartok, a librarian at PSC, (3) Frances Yeo, Continuing Education Coordinator at PSC, (4) Mr. Wilburn, a member of the PSC campus police, (5) Gael Frazer, Associate Vice President of Institutional Diversity at PSC, and (6) Mr. Bridges, an individual who frequents the PSC library (ECF No. 26 at 1–3).[1] In Brewer's Statement of Facts, she provides a narrative of why she moved from the State of Oklahoma to Pensacola, claiming that she was the victim of "a vigilante extremist movement to plunder my career thru [sic] civil unrest and illegal police abductions with demonstration of weapons and assault with lighting devices" (*id.* at 4). Brewer claims that while she was in Oklahoma, she attended Fisherman's House Church and was "shocked at the level of targeting" (*id.*). Brewer states, "I thought many times I would lose my drivers liscence [sic] thru excessive fine, with false reports" (*id.*). Brewer states she was "cheated out of museum contracts" (*id.*). She states she had two "prominent contracts, although thru starvation I could not finish one and the other I lost in small claims court for 1/3 the contract" (*id.* at 5). Brewer states that in November of 2012, she became a "Red Cross victim," and her attempt at a second career was "ruined thru corruption in government and the

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Brewer may have assigned.

Case No.: 3:15cv95/RV/EMT

denial of protective orders and witness tampering" (*id.* at 4). She states she could not secure employment and "had male violence and vandalism on my vehicle" (*id.*). Brewer states, "after a prestigous [sic] career in the arts, I have been segregated through perjury and fraud" (*id.* at 5).

Brewer alleges that her "problems with Pensacola State College and segregation" began with a false trespassing charge at the Gull Point Community Center on July 4, 2013 (ECF No. 26 at 6). She alleges that on August 10, 2013, she was "illegally framed by Escambia County, after being spat at twice by 3 young males carrying open containers" (*id.*). Brewer states she called for help, but ended up in jail (*id.*). Brewer states that on October 28, 2013, "days after an assault with throwing large objects and yelling with hands in my face," she was issued a trespass warning at the Pensacola YMCA (*id.* at 5–6).

Brewer further alleges, "All dance with active participation in 3 dance companies has been denied from Middle Eastern dance in Pensacola to me as a native born person of Middle Eastern descent with citizenship in Turkey, as a unique dual American citizen with a retired U.S. Navy father in a U.S. Navy town named Pensacola. This has accured [sic] for years." (ECF No. 26 at 6). Brewer alleges she met Defendant Bartok, a PSC librarian, at the Gull Point Community Center during

a free dance class offered by a Saraab dancer troupe (*id.*). Brewer states she asked one of the members of the dance troupe if they would be interested in buying some of her dance books or costumes (*id.*). Brewer states she asked the leader of the dance troupe if she could pay for dance classes one class at a time, and the leader told her she would let her know (*id.*). Brewer alleges that on July 4, 2013, she "returned to ask about class and a sub-teacher wanted me to join in" (*id.* at 7). Brewer states, "the Pensacola Police force defamates [sic] the incident" (*id.*). She alleges the dance troupe moved its classes to the First City Arts Center (*id.* at 7). Brewer alleges, "I thought perhaps I could now pay by the class since I was under starvation with Red Cross status and it represented my heritage by Nation and ethnic history." (*id.*). Brewer alleges she was "illegally defamated" by the Saraab dance teacher when the teacher told her she could not pay for classes with food stamps (*id.*).

    Brewer alleges the month of August 2013 was "full of tragic events" (ECF NO. 26 at 7). She states she was the victim of "violence events surrounding drinking and male agression [sic]" (*id.*). She states she was "victimized with 10 days in jail," and her car was illegally searched and seized and left unlocked on the beach during her detention (*id.*).

Brewer alleges that on October 20, 2013, she met with Defendant Continuing Education Coordinator Yeo and signed a contract to teach a class at PSC (ECF No. 26 at 7).[2] Brewer alleges that the following month, she suffered a "second psychological injury of defamation" at the PSC library when Defendant Mr. Bridges stood over her shoulder while she was writing "Lt. Stull" about false trespassing charges (ECF No. 26 at 8). Brewer alleges when she asked Mr. Bridges to stop his behavior, Defendant Librarian Bartok told Brewer to leave the library (*see id.*; *see also* ECF No. 1 at 3). Brewer states she explained that she had been hired to teach a class, but Librarian Bartok called her an imposter (ECF No. 26 at 8). Brewer alleges the next week, on December 3, 2013, Defendant Yeo notified her that PSC would not be offering her class, even though her class had been advertised in the catalogue that week (*id.*). Brewer alleges the PSC campus police (presumably Defendant Wilburn) told her she was not welcome at PSC any longer, issued her a trespass warning, and "illegally" escorted her off the campus (*id.* at 8; *see also* ECF No. 1 at 3). Brewer alleges she filed a grievance with Defendant Frazer, Associate Vice President of Institutional

---

[2] The court notes that when Brewer filed a prior amended complaint, she attached a copy of a Pensacola State College Non-Credit Section Request Form, which indicates that on October 10, 2013, Defendant Yeo approved Brewer's request to teach a 12-week class for a total salary of $648.00 (*see* ECF No. 19 at 8, 15). The contract provided that the class would be canceled if it had less than the minimum required enrollment of six students (*id.* at 8).

Case No.: 3:15cv95/RV/EMT

Page 6 of  18

Diversity (ECF No. 26 at 9, 10).  Brewer states neither Frazer nor Defendant President Meadows followed up on her grievance (*id.*).

Brewer alleges she has been "starved and black-listed" due to "country of origin and gender based violence" (ECF No. 26 at 10).  She alleges, "PSC's publications represent people of Middle East and the Orient in deprivation, with substitution of affluence with non-native peoples in costume everywhere" (*id.*).

Brewer alleges after PSC terminated her contract, she returned to Oklahoma (*see* ECF No. 26 at 5).  She alleges she was "pushed off ladders at 10 ft.," and the State of Oklahoma allowed her employer to "hide" (*id.*).  Brewer alleges she sustained a back injury, and her former employer works offshore and refuses to comply with workers' compensation laws (*id.* at 9).

Brewer completed the "Statement of Claims" section of the complaint form by setting forth the following list:

    1) Illegal pattern and practice Crime Control Act 1994, see OK Cases

    2) See color of law abuses on race/gender violence, 18 U.S. Code 241–242

    3) Federal tort laws for breach of trust

    4) See Oklahoma cases, 18 U.S. Code 244–242

    5) See OK cases for obstruction of justice/witness tampering

6–7) Workmans comp fraud

8) See Escambia Sheriff cases, 3:15cv89/MCR/CJK/3:15cv132/MCR/CJK

9) Federal tort laws on slander, FL Statute 92.52, 112 (all)

10–28) Civil Rights Act of 1964, Title VII and IX, FL s. 119.07 denied report/false evidence, defamation, FL s. 836.05, illegal search and seizures, denied 1st, 4th, 5th, & 14th Amendment rights, also due process/equal protection, gross negligence President Meadows FL s. 768, see also Jud. Conduct Act 1980, 28 USC 351–364

(ECF No. 26 at 11).

As relief, Brewer requests:

Declaratory prayer of relief all in violation of Title XLIV ch. 760 civil rights discrimination in the treatments of persons, minority representation. Three million dollars for increasing knowingly extremisms [sic], causing physical and mental destruction. Defamation of a United States Navy family that stood for freedom and justice. Unemployed with homelessness and constant plunder even during Christmas 2015.

(ECF No. 26 at 11).

II. ANALYSIS

Because Plaintiff is proceeding in forma pauperis, the court may dismiss a claim if satisfied that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state

a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P.

8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### A. Discrimination Claims under 42 U.S.C. § 2000e, *et seq.* and the Fourteenth Amendment

Title VII of the Civil Rights Act of 1964, in relevant part, forbids covered employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Employees who believe that they are the victims of discrimination may, of course, present direct evidence of that discrimination. When direct evidence of unlawful discrimination is lacking, Title VII plaintiffs may instead turn to the burden-shifting

framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See* Flowers v. Troup Cnty., Ga., School Dist., 803 F.3d 1327, 1335 (11th Cir. 2015).

Under the McDonnell Douglas framework, a plaintiff first must make out a prima facie case of discrimination that "in effect creates a presumption that the employer unlawfully discriminated against the employee." Burdine, 450 U.S. at 254. A plaintiff makes out a prima facie case when she shows by a preponderance of the evidence (1) that she is a member of a protected class, (2) that she was qualified for the position, (3) that she experienced an adverse employment action, and (4) that she was replaced by someone outside of her protected class or received less favorable treatment than a similarly situated person outside of her protected class. *See* Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing McDonnell Douglas Corp., 411 U.S. at 802).

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause, a prisoner generally must allege "that

(1) she is similarly situated with other persons who received more favorable treatment; and (2) her discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated to her. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The plaintiff must also allege that the defendant acted with the intent to discriminate against her. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment.'"  Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007), quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).  The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. Id. at 1204–05.  Indeed, the "similarly situated" requirement must be rigorously applied in the context of "class of one" claims.  See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009).

Here, Brewer does not allege any facts suggesting that she received less favorable treatment than a similarly situated person outside of her protected class. Because such allegations are required to state a plausible claim of discrimination under Title VII and the Equal Protection Clause, her federal claims of discrimination should be dismissed for failure to state a claim upon which relief can be granted. See Flowers, 803 F.3d at 1335 n.7 (the fate of a plaintiff's equal protection claims under the Fourteenth Amendment "rise and fall" with his or her Title VII claim) (citation omitted) .

    B.    Other Section 1983 Claims

Brewer claims that Defendants violated her rights under the First Amendment, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment (ECF No. 26 at 11).  Brewer's complaint is devoid of any factual allegations suggesting that any Defendant's conduct violated the First Amendment or the Due Process Clause.  With regard to her Fourth Amendment claim, Brewer alleges that her car was illegally searched and seized; however, she does not allege that any named Defendant participated in the search and seizure, nor does she allege facts that otherwise suggest a basis for holding any Defendant liable for the alleged Fourth Amendment violation.  Therefore, Brewer's § 1983 claims should be dismissed for failure to state a plausible claim for relief.

C.   Claims under "Federal Tort Laws"

Brewer claims a violation of "Federal tort laws," including "breach of trust" and slander.  To the extent Brewer seeks to bring a claim under the Federal Tort Claims Act ("FTCA"), it is inapplicable in this case because none of the Defendants is an employee of the federal government.  *See* 28 U.S.C. § 1346(b)(1); *see also, e.g.,* Abuhouran v. Soc. Sec. Admin., 291 F. App'x 469, 473 (3d Cir. 2008) (state actors cannot be sued under the FTCA); Brewer v. Pensacola Police Dep't, No. 3:15cv469/MCR/CJK, 2015 WL 8113253, at *3 (N.D. Fla. Nov. 13, 2015), *Report*

*and Recommendation Adopted by* 2015 WL 8207502 (N.D. Fla. Dec. 7, 2015); Milton v. Boles, Case No. 3:08cv286/LAC/MD, 2008 WL 5070052, *4 (N.D. Fla. Nov. 24, 2008) ("Plaintiff's allegations cannot support a claim under the FTCA because the defendants are state actors, not federal actors."). Therefore, Brewer's "federal tort claims" should be dismissed.

### D.     Claims under Criminal Statutes

Brewer asserts claims under federal and state criminal statutes, specifically, 18 U.S.C. §§ 241, 242, the federal Crime Control Act of 1994, and Florida Statutes § 836.05. A private individual cannot bring an individual action under a criminal statute, because the court is not vested with power to prosecute criminal cases. *See* Higgins v. Neal, 52 F.3d 337 (10th Cir. 1995); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (noting that "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242"); *see also* Dugar v. Coughlin, 613 F. Supp. 849 (S.D.N.Y. 1985) (no private right of action under federal criminal statutes); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (same). Therefore, Brewer's claims under federal and state criminal statutes should be dismissed.

### E.     State Law Claims

Brewer's state law claims should be dismissed without prejudice to her pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. See Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. See also United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that all state law claims asserted by Brewer should be dismissed to permit her to pursue them in a more appropriate forum. While it would be convenient for Brewer to continue litigating her case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Brewer's state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall

have 30 days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Brewer's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

III. CONCLUSION

Brewer's allegations fail to state a plausible federal claim on which relief may be granted; therefore, her federal claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Additionally, the court should decline to exercise supplemental jurisdiction over any state law claims asserted by Brewer; therefore, those claims should be dismissed without prejudice.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims be **DISMISSED with prejudice** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That Plaintiff's state law claims be **DISMISSED without prejudice**.

3. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 6<u>th</u> day of June 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**